UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IVY L. REEVES,

       Plaintiff,

  v.

CITY OF YONKERS, MICHAEL SABATINO,
CHRISTOPHER JOHNSON, and CARLOS
MORAN,

       Defendants.

No. 17-CV-5341 (KMK)

OPINION & ORDER

---

Ivy L. Reeves
Yonkers, NY
*Pro Se Plaintiff*

Matthew I. Gallagher, Esq.
Dusan B. Lakic, Esq.
City of Yonkers, Office of the Corporation Counsel
Yonkers, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

  Ivy Reeves ("Plaintiff") brings this pro se Action against Defendants the City of Yonkers, as well as three Yonkers officials sued in their personal and official capacities — Michael Sabatino ("Sabatino"), Christopher Johnson ("Johnson"), and Carlos Moran ("Moran") (together, "Individual Defendants") — alleging that she was terminated her from her position with the City of Yonkers for her political campaigning, in violation of her rights under the First Amendment. (*See generally* Third Am. Compl. ("TAC") (Dkt. No. 33).) Before the Court is Defendants' Motion To Dismiss (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of Mot. (Dkt. No. 36).) For the reasons discussed below, the Motion is granted.

I. Background

A. Factual History

The Court previously detailed the facts of this case in a December 17, 2018 Opinion & Order (the "Prior Opinion") issued in a related case brought by Plaintiff against the City of Yonkers. (*See* Prior Op. 3–10 (No. 16-CV-2223, Dkt. No. 72).)[1] The Court recounts only those facts necessary for consideration of the instant Motion.

In January 2012, Plaintiff was hired by the City of Yonkers as a legislative aide for Sabatino, a member of the Yonkers City Council. (TAC 9.)[2] While employed by the City, she "continued in [her] long-standing role as an active supporter of the local community," including by writing newspaper articles and hosting community events. (*Id.* at 9, 11.) Sabatino initially supported Plaintiff's activism, but after Plaintiff published a newspaper article in 2013, "Sabatino sent [her] an admonishing email" stating:

> [A]ny publications that you write, or public speaking of a political nature surrounding Yonkers City government[,] must be run by me before being submitted for publication or public airing. Failing to do so may result in termination of your employment.

(*Id.* at 12.)

Plaintiff continued to speak out on community issues, including local political corruption. (*Id.* at 9–10.) Most importantly, Plaintiff decided to seek local office herself by challenging Johnson, another member of the Yonkers City Council, for his seat. (*Id.* at 9–10, 13.) At about the same time, Plaintiff "requested to take time off to attend to a number of medical appointments, and to remove [herself] from the stressful work environment." (*Id.* at 13.)

---

[1] The Prior Opinion may also be found at *Reeves v. City of Yonkers*, 348 F. Supp. 3d 264 (S.D.N.Y. 2018).

[2] Plaintiff's filings do not use consistent page numbering. For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top of each page.

However, "[n]o sooner was [her] Democratic campaign collecting signatures outside of work on her own time [when] Sabatino . . . terminated [her]." (*Id.* at 10.) Sabatino told Plaintiff "that he was terminating [her] for two reason[s]: (1) on belief that [she] was going to use [her] comp time off to campaign for the upcoming election . . . , and (2) because [her] 'candidacy for Council . . . creates a direct conflict of interest . . . between [her] status as a candidate and [her] role as an employee in the Office of Minority Leader.'" (*Id.* at 14.) Plaintiff alleges that her termination was in "retaliation" for her exercise of her First Amendment rights. (*Id.* at 10, 15.)

### B. Procedural History

Plaintiff filed her initial Complaint on July 13, 2017. (Compl. (Dkt. No. 2).) Plaintiff filed an Amended Complaint on August 6, 2018, (Dkt. No. 26), and a Second Amended Complaint on August 8, 2018, (Dkt. No. 27). Plaintiff filed the instant Third Amended Complaint on November 14, 2018. (TAC.) Defendants filed their Motion To Dismiss or, in the alternative, for Summary Judgment, on January 2, 2019. (Not. of Mot. (Dkt. No. 36); Defs.' Mem. of Law. in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 37).) Plaintiff filed a response in opposition on February 15, 2019. (Pl.'s Resp. to Defs.' Mot. ("Pl.'s Mem.") (Dkt. No. 41).) Defendants filed a reply on February 19, 2019. (Defs.' Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 42).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all

reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [the plaintiff] relied in bringing the suit," *Rothman v.*

5

*Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

B. Analysis

Defendants argue that Plaintiff's claims are barred by the doctrines of collateral estoppel and res judicata. (Defs.' Mem. 4–15.) Plaintiff acknowledges the issue of collateral estoppel but does not meaningfully argue as to why it should not apply in this case. (Pl.'s Mem. 5.) Plaintiff does not appear to acknowledge Defendants' res judicata argument.

1. Collateral Estoppel

Collateral estoppel, also known as issue preclusion, "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." (citation and quotation marks omitted)). *Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010). Accordingly, collateral estoppel will preclude a court from deciding an issue where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (citation omitted). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *see also Thomas v. Venditto*, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same).

Here, as to the first element, the issue raised in the instant Action is identical to that raised in the prior proceeding. In the prior proceeding, Plaintiff alleged that the City of Yonkers discriminated against her by terminating her from her position as Sabatino's legislative aide for

"using compensation time for medical appointments," in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), and Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-2(a)(1). (Prior Op. 13.) The City argued in response that it was in fact Plaintiff's "campaign for public office" that caused her termination, in that it "created a direct conflict of interest" between her job and her candidacy. (*Id.* at 13–14.) In this Action, Plaintiff alleges that Defendants — the City of Yonkers and three of its employees — retaliated against her by terminating her from her position because of her "decision to run for office," in violation of the First Amendment. (TAC 5–7, 10, 14.) Although the causes of action differ, the underlying issue — whether Plaintiff was terminated for a legitimate, non-discriminatory reason — is identical. *See W&D Imports, Inc. v. Lia*, 563 F. App'x 19, 23 n.5 (2d Cir. 2014) ("Collateral estoppel . . . can bar litigation of claims involving different theories of recovery as long as the *issues* underlying those claims were the same."). Indeed, the Court, in previously considering whether the City of Yonkers had satisfied its burden of showing that it terminated Plaintiff for a legitimate, non-discriminatory reason, analyzed First Amendment case law addressing the termination of public employees on the basis of political views or partisan activity. (Prior Op. 14–22.) As Defendants point out, (Defs.' Mem. 6–7), the Court would be required to consider the same case law in the instant First Amendment retaliation challenge. *See Marden v. Dinin*, 22 F. Supp. 2d 180, 186 (S.D.N.Y. 1998) ("[T]he first prong of the collateral estoppel test is met because issues essential to plaintiff's First Amendment claim (i.e. the existence of a retaliatory scheme and the reasons for his discharge) were decided adversely to him in the prior [Article 78] proceeding.").

As to the second and third elements, the issue of Plaintiff's allegedly wrongful termination was — after Plaintiff's full and fair opportunity to litigate the issue, (*see* Prior Op. 11

7

(noting procedural history showing that Plaintiff filed a response in opposition to the motion for summary judgment) — actually litigated and decided in the Prior Opinion. The Court, in analyzing Plaintiff's disability discrimination claim, concluded that, even assuming Plaintiff could make out a prima facie case of discrimination, Defendants had "proffered overwhelming evidence of a legitimate, nondiscriminatory reason for Plaintiff's termination," namely, "that Plaintiff's campaign for public office created a direct conflict of interest between her status as a candidate and her role as an employee in the Office of the Minority Leader." (*Id.* at 14 (citation and quotation marks omitted).) In particular, the Court found that "Plaintiff held a position whose inherent duties were political, that Plaintiff actually exercised several of these inherently political duties, . . . that Plaintiff's position required political alignment between herself and Councilman Sabatino," that Plaintiff clearly engaged in a variety of political activities — including campaigning against Johnson, a councilman aligned with Sabatino — and, therefore, that the City of Yonkers had provided evidence that Plaintiff was discharged for legitimate (i.e., political), not discriminatory, reasons. (*Id.* at 20–22.) The Court also found that Plaintiff failed to show that her termination was in fact pretextual. (*Id.* at 22–24.) There can thus be no argument (and Plaintiff makes none) that Plaintiff did not receive a full and fair opportunity to litigate the issue or that the issue was not actually litigated.

Finally, as to the fourth element, the resolution of the issue was clearly necessary to support a valid and final judgment on the merits. The Prior Opinion, in which the Court entered summary judgment for the City of Yonkers, (*id.* at 24), is "considered a decision on the merits" for purposes of collateral estoppel. *DeCastro v. City of New York*, 278 F. Supp. 3d 753, 764 (S.D.N.Y. 2017) (citations omitted). And the issue of Plaintiff's allegedly wrongful termination was the sole basis for Plaintiff's complaint and, accordingly, the sole focus of the Prior Opinion.

In sum, the Court concludes that the issue of whether Plaintiff was wrongfully terminated from her position with the City of Yonkers was squarely raised, fully and fairly litigated, and finally adjudicated against Plaintiff in the prior proceeding. Therefore, collateral estoppel applies. That Plaintiff has proceeded pro se in both proceedings does not exempt her from application of the doctrine. *See Wang v. New York*, No. 18-CV-2154, 2018 WL 2871842, at *3 (E.D.N.Y. June 11, 2018) (noting that "collateral estoppel appl[ies] to pro se litigants" (citing, inter alia, *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205–06 (2d Cir. 2002))). Accordingly, Plaintiff is precluded from re-litigating the sole issue — her allegedly wrongful termination — underlying the instant Action.[3]

2. Res Judicata

"The doctrine of res judicata, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (citation, quotation marks, and alterations omitted). At its core, res judicata "is a rule against the splitting of actions that could be brought and resolved together." *Nestor v. Pratt & Whitney*, 466 F.3d 65, 70 (2d Cir. 2006). Four requirements are necessary for res judicata to apply to subsequent litigation. The prior decision must have been "(1) a final

---

[3] This conclusion applies to all Defendants notwithstanding that the Individual Defendants are, to the extent they are sued in their individual capacities here, not in privity with the defendants in the prior proceeding. *See infra* note 4; *see also Williams v. N.Y.C. Housing Auth.*, No. 19-CV-918, 2019 WL 1765081, at *3 (E.D.N.Y. Apr. 22, 2019) ("[T]he doctrine of non-mutual defensive collateral estoppel precludes a plaintiff from relitigating identical issues by merely switching adversaries." (citations omitted)); *Zappin v. Cooper*, No. 16-CV-5985, 2018 WL 708369, at *15 (S.D.N.Y. Feb. 2, 2018) ("Collateral estoppel can be 'offensive' or 'defensive,' and as relevant here, defensive use 'occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant.'" (citation omitted)); *aff'd*, 2019 WL 2142528 (2d Cir. May 15, 2019).

9

judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221–22 (2d Cir. 2012) (citation omitted). To determine whether the fourth element is satisfied, courts look to "whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Brown Media*, 854 F.3d at 157 (citations and quotation marks omitted). Put differently, "[t]wo actions arise from the same claim when (1) the underlying facts are related in time, space, origin or motivation, (2) when they form a convenient trial unit, and (3) when their treatment as a unit conforms to the parties' expectations." *Jean-Gilles v. County of Rockland*, 463 F. Supp. 2d 437, 453 (S.D.N.Y. 2006) (citing *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000), *aff'd*, 207 F.3d 105 (2d Cir. 2000)).

Here, as to the first and second elements, this Court's Prior Opinion granting summary judgment in favor of the City of Yonkers, (Prior Op. 24), was, as noted, a final judgment on the merits entered by a court of competent jurisdiction. *See Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008) ("[A] summary judgment dismissal is considered a decision on the merits for *res judicata* purposes." (citing *Weston Funding Corp. v. Lafayette Towers, Inc.*, 550 F.2d 710, 715 (2d Cir. 1977))). As to the third element, the instant Action and the prior proceeding have involved the same parties — Plaintiff and the City of Yonkers — as well as privies of the City, as Defendants Sabatino, Johnson, and Moran are government officials employed by the City and sued in their official capacities. (TAC 1.) *See Johnson v. County of Nassau*, 480 F. Supp. 2d 581, 607 (E.D.N.Y. 2007) ("Government officials sued in their official

capacities are generally considered to be in privity with the government entity that they serve.").[4]

Finally, as to the fourth element, Plaintiff's First Amendment retaliation claim in this Action arises from the same set of operative facts that produced her ADA and Title VII discrimination claims considered by the Court in the Prior Opinion, namely, Plaintiff's employment with the City of Yonkers, her political candidacy and activity contrary to Sabatino's wishes, her request for medical leave and time off work, and her resulting termination. (*Compare* TAC 9–15 (alleging that Plaintiff worked as a legislative aide for Sabatino; that she later "began the process of running for the seat held by Johnson," in particular by "collecting signatures"; that she took time off to "remove [herself] from the stressful work environment"; and that she was "terminated in retaliation" by Sabatino) *with* Prior Op. 3–10 (describing Plaintiff's employment with Sabatino; her candidacy for office challenging for Johnson's seat and campaign activities; and her termination by Sabatino).) Although Plaintiff's instant claim rests on a "different legal theor[y]" than did her earlier claims, "[p]roof of [this] claim[] would depend upon substantially the same facts and evidence." *Smith v. City of New York*, 130 F. Supp.

---

[4] To the extent Sabatino, Johnson, and Moran are also sued in their individual capacities, (TAC 1), they are "not considered in privity with the government." *Johnson*, 480 F. Supp. 2d at 607 (citations omitted); *see also Maldonado v. Evans*, No. 11-CV-717, 2015 WL 1431646, at *8 (W.D.N.Y. Mar. 27, 2015) ("As the defendants in the [earlier] proceeding were government officials sued in their official capacities, whereas this . . . action seeks damages from defendants in their individual capacities, the earlier decision did not involve the same parties that are involved in this action." (citations omitted)); *Gertskis v. N.Y. Dep't of Health & Mental Hygiene*, No. 13-CV-2024, 2014 WL 2933149, at *5 (S.D.N.Y. June 27, 2014) ("To the extent that [the government officials] are being sued in their individual capacities, *res judicata* may not apply to them." (citation omitted)); *but see Shekhem'El-Bey v. New York*, 464 F. Supp. 2d 329, 334 n.3 (S.D.N.Y. Dec. 11, 2006) ("Absent a single allegation that the individual defendants acted outside the scope of their employment or were otherwise personally involved in the alleged violations, however, this Court must assume that plaintiff's claims against the individual defendants are viable only as official capacity claims." (citations omitted)); *Waldman*, 39 F. Supp. 2d at 382 (holding that res judicata applied to claims against local government officials sued in their individual capacities).

3d 819, 829 (S.D.N.Y. 2015), *aff'd*, 664 F. App'x 45 (2d Cir. 2016). This is not a case in which the instant claim "concerns a transaction occurring after the commencement of the prior litigation." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 400 F.3d 139, 141 (2d Cir. 2005). To the contrary, "the same evidence is needed to support both claims" and the same "facts essential to the [instant claim] were present in the first." *Brown Media*, 854 F.3d at 157. Plaintiff thus could have raised her First Amendment retaliation claim in the prior proceeding, but failed to do so. *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010) (noting that res judicata bars all claims that "were or *could have been* raised in the first lawsuit" (emphasis added)). Put differently, this is a classic case in which Plaintiff has "split[]" in two a case that should have been "brought and resolved together," *Nestor*, 466 F.3d at 70, as a "convenient trial unit," *Jean-Gilles*, 463 F. Supp. 2d at 453.

Therefore, Plaintiff's First Amendment retaliation claim is barred by res judicata, at least as to the City of Yonkers and the Individual Defendants to the extent they are sued in their official capacities. *See Saidin v. City of New York*, No. 19-CV-1448, 2019 WL 2502131, at *4 (S.D.N.Y. June 14, 2019) ("Because Plaintiff's previous litigation was adjudicated on the merits, involved the same parties or their privies, and arises out of the same sets of transactions as the current action, [s]he cannot again raise in this action any issues adjudicated in his previous litigation."); *Jackson v. Conn. State Dep't of Pub. Health*, No. 18-CV-1482, 2019 WL 2193464, at *6 (D. Conn. May 21, 2019) (applying res judicata to dismiss a First Amendment claim where the court's prior opinion dismissed a Fourteenth Amendment "freedom to contract" claim based on the same facts); *Dash v. Bank of Am. Corp.*, No. 18-CV-4807, 2019 WL 1780140, at *8 (S.D.N.Y. Apr. 23, 2019) (applying res judicata to dismiss a claim that "stem[med] from the identical 'nucleus of facts'" as the prior litigation); *Hyman v. Cornell Univ.*, No. 15-CV-792,

2017 WL 1194231, at *8 (N.D.N.Y. Mar. 30, 2017) (applying res judicata to dismiss a First Amendment claim where "[t]he facts needed to support" it "require proof of the same facts that [the plaintiff] alleged" in prior litigation on the plaintiff's Title IX discrimination claim), *aff'd*, 721 F. App'x 5 (2d Cir. 2017).

## III. Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is granted. The Third Amended Complaint is dismissed in its entirety, with prejudice, as amendment would be futile. *See McGriff v. Keyser*, No. 17-CV-8619, 2019 WL 1417126, at *6 (S.D.N.Y. Mar. 29, 2019) (dismissing with prejudice claim where the issue was precluded by collateral estoppel); *Wendt v. BondFactor Co. LLC*, Nos. 16-CV-7751, 16-CV-8091, 2017 WL 3309733, at *7 (S.D.N.Y. Aug. 2, 2017) (dismissing with prejudice claim precluded by res judicata); *see also Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012) (stating that even pro se plaintiffs are not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile"), *aff'd*, 523 F. App'x 32 (2d Cir. 2013).

The Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 36), to mail a copy of this Order to Plaintiff, and to close this case.

SO ORDERED.

DATED: June 25, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

13